# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

DUSTY WILMORE                                                                   PLAINTIFF

V.                                        No. 3:22-CV-8-JTR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                                  DEFENDANT

## ORDER

### I. Introduction

Plaintiff Dusty Wilmore applied for disability benefits, alleging disability beginning on February 28, 2019. (Tr. at 10). His application was denied initially and upon reconsideration. *Id*. Wilmore then requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. After conducting a hearing, the ALJ denied his application on September 1, 2021. (Tr. at 25). The Appeals Council later denied Wilmore's request for review of the ALJ's decision. (Tr. at 1). Therefore, the ALJ's denial of Wilmore's application for benefits stands as the final decision of the Commissioner.

Wilmore filed this case seeking judicial review of the decision denying him benefits. For the reasons stated below, the Court[1] reverses the ALJ's decision and remands the case for further consideration.

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. *Doc. 4*.

## II. The Commissioner's Decision

The ALJ found that Wilmore had not engaged in substantial gainful activity since his alleged onset date of February 28, 2019. (Tr. at 13). At Step Two of the five-step disability evaluation,[2] the ALJ found that Wilmore had the following severe impairments: morbid obesity, major depressive disorder, post-traumatic stress disorder, bilateral carpal tunnel syndrome, lumbar spine osteoarthritis, and cervical degenerative disc disease. *Id*.

After finding that Wilmore's impairments did not meet or equal a listed impairment (Tr. at 14), the ALJ determined that Wilmore had the ability to perform work at the sedentary exertional level, except that: (1) he could not climb ladders, ropes, or scaffolds; (2) he could only occasionally climb ramps and stairs, stoop, balance, crouch, kneel, and crawl; and (3) he could perform no more than frequent reaching and handling duties (Tr. at 16–17). The ALJ found that Wilmore would be limited to simple, routine, and repetitive task jobs with supervision that is simple, direct, and concrete. *Id*. The ALJ also determined that Wilmore could not perform

---

[2] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)–(g).

jobs that exceeded a level two reasoning level or that required interaction with the general public. *Id*.

Relying upon Vocational Expert ("VE") testimony, the ALJ determined that Wilmore was unable to perform his past relevant work as an infantry unit leader. (Tr. at 23). The ALJ found, however, that based on Wilmore's age, education, work experience, and residual functional capacity ("RFC"), other jobs existed in significant numbers in the national economy that he could perform, including occupations such as addresser and table worker. (Tr. at 24). The ALJ therefore concluded that Wilmore was not disabled. (Tr. at 25).

### III. Discussion

A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however,

"merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

    B. Wilmore's Arguments on Appeal

Wilmore contends that substantial evidence does not support the ALJ's decision to deny benefits. He first argues that the ALJ erred in his treatment of the medical opinion evidence in his case. He then challenges several of the ALJ's RFC findings. After reviewing the record as a whole, the Court concludes that the ALJ's decision should be reversed and remanded for further consideration.

Wilmore first objects to the ALJ's evaluation of a medical opinion completed by two of his treating providers. In November 2020, Megan Anderson, a nurse practitioner in psychiatry, and William Smith, Wilmore's therapist, completed a medical source statement regarding Wilmore's mental functional abilities. (Tr. at 1065–67). They opined that Wilmore had extreme limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual; to work in proximity to others without being distracted by them; to respond appropriately to changes in the work setting; and to complete a normal workday and workweek without interruption and perform at a consistent pace without an unreasonable number and length of rest periods. *Id*. They opined that Wilmore had a marked limitation in his ability to get along with co-workers without distracting them or exhibiting behavioral extremes. (Tr. at 1066). They also indicated that Wilmore's mental impairments and treatment would cause him to miss more than three days of work per month. (Tr. at 1067).

An ALJ considers medical opinions in the record as part of determining a claimant's RFC. 20 C.F.R. § 404.1545(a)(3). The ALJ does not defer or give any specific evidentiary weight to a medical opinion, regardless of the source. 20 C.F.R. § 404.1520c(a). Instead, the ALJ evaluates the persuasiveness of each medical opinion based on a number of factors, including the supportability of the opinion, the consistency of the opinion with other evidence in the record, the source's

relationship with the claimant, any specialization the source may have, and any other factors that tend to support or contradict the opinion. *Id.* § 404.1520c(c)(1)–(5). Supportability and consistency are the most important factors, and the ALJ will explain in the final written opinion how these factors were considered. *Id.* § 404.1520c(b)(2).

When the ALJ evaluated the persuasiveness of the medical source statement, he acknowledged Ms. Anderson's authorship, but not Mr. Smith's. Instead, the ALJ erroneously believed that Wilmore himself had authored Mr. Smith's portion of the opinion. (Tr. at 22). The ALJ ultimately determined that the opinion was not persuasive, "given that it [was] only partially supported by Ms. Anderson's treatment notes, [was] partially consistent with the record available at the time of this decision, and appear[ed] to have been partially completed by the claimant." (Tr. at 22). The Commissioner concedes the error, but argues it was both reasonable and harmless. *Doc. 12* at 7. The Court agrees that the ALJ's mistake was understandable, since Mr. Smith had written Wilmore's name and date of birth on a line reserved for the name and phone number of the clinic. (Tr. at 1067).

Whether the error was harmless, however, presents a closer issue. "An error is harmless when the claimant fails to provide some indication that the ALJ would have decided differently if the error had not occurred." *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (internal quotation omitted). Reversal will be warranted if the

6

Court "cannot determine whether the ALJ would have reached the same decision denying benefits, even if [he] had followed the proper procedure for considering and explaining the value of [Mr. Smith's] opinion." *Id*. at 1070 (internal quotation omitted).

On one hand, the ALJ's error undoubtedly affected his evaluation of the opinion's supportability.³ The ALJ found that Ms. Anderson's treatment notes did not support the opinion, but he failed to consider whether Mr. Smith's treatment notes did. (Tr. at 22). In contrast to Ms. Anderson's normal clinical findings regarding Wilmore's mood and affect, Mr. Smith's treatment notes consistently noted a depressed and anxious mood, and frequently noted a flat or blunt affect. (Tr. at 896, 900, 906, 919, 927, 945, 957, 963, 1055, 1157, 1169). There is no indication that the ALJ considered Mr. Smith's supportive explanation on the medical source statement, either. (Tr. at 1067). Mr. Smith cited numerous symptoms and signs to support his opinion, including depressed mood, sadness, anxiety, sleep disturbances, mental focus problems, irritability, anhedonia, poor concentration, memory disturbances, hypervigilance, forgetfulness, and a high startle response. (Tr. at 1067). The ALJ believed Wilmore authored that portion of the opinion and thus failed to consider this evidence appropriately, if he considered it at all.

---

³ "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1).

7

Additionally, the ALJ's error necessarily affected the ALJ's consideration of another factor—the treatment relationship between the medical source and the claimant.[4] Mr. Smith's treatment relationship with Wilmore was a year longer than Ms. Anderson's, with far more frequent examinations, suggesting that Mr. Smith possessed a greater longitudinal understanding of Wilmore's mental impairments. The ALJ was not required to, and did not, discuss how he considered this factor in his evaluation. But if the ALJ had properly considered this treatment relationship, the opinion would have likely been more persuasive to some degree.

On the other hand, the ALJ also discounted the supportability of Ms. Anderson's opinion because of her clinical notes showing that Wilmore was cooperative, pleasant, polite, alert, and oriented, with normal thought processes and content, normal speech, and no suicidal or homicidal thoughts. (Tr. at 22). Similar clinical findings are consistently reported in Mr. Smith's notes as well, so the ALJ would have likely discounted Mr. Smith's notes for the same reasons. Plus, the ALJ found that the opinion was inconsistent with the record evidence based on comparable findings appearing in other examiners' notes. (Tr. at 923, 932, 951–52,

---

[4] One of the five listed factors considered in evaluating medical opinions is the medical source's relationship with the claimant. 20 C.F.R. § 404.1520c(c)(3). This factor examines: the length of the treatment relationship and the frequency of examinations, which can demonstrate the medical source's longitudinal understanding of the claimant's impairments; the purpose and extent of the relationship, which may demonstrate the medical source's level of knowledge regarding the claimant's impairments; and whether the medical source has examined the claimant or only reviewed evidence in the claimant's folder. *Id.* § 404.1520c(c)(3)(i)–(v).

313–14). Wilmore argues that the ALJ erred in relying on such "boilerplate comments" to discount the opinion's persuasiveness. But these findings do tend to contradict the notion that Wilmore suffers extreme social limitations and is unable to work at a proper pace.

Overall, this argument presents a close call. On balance, though, the Court cannot conclusively determine that the ALJ's evaluation of the medical opinion would be the same absent the error. The ALJ expressly discounted the persuasiveness of the opinion in part because he believed Wilmore had authored it. Mr. Smith's treatment notes support the opinion more than Ms. Anderson's notes do. And the consideration of Mr. Smith's treatment relationship would affect the balance to some degree. If the ALJ had properly considered Mr. Smith's opinion, he may have found it more persuasive in determining Wilmore's RFC. And the Court cannot conclude that the ALJ would have reached the same decision if he had found the opinion more persuasive. The VE testified at the hearing that a hypothetical individual with Wilmore's age, education, work background, and RFC would not be employable if he missed three days of work per month, or if he could not work around other people without being distracted. (Tr. at 54). Mr. Smith opined that both of these limitations applied to Wilmore. Given the circumstances, it is appropriate to reverse the ALJ's decision and remand the case for further consideration.

9

Wilmore also challenges several of the ALJ's physical and mental RFC findings. The arguments regarding Wilmore's physical impairments are unavailing. Wilmore argues that the ALJ was required to obtain opinion evidence from an examining physician, but the Eighth Circuit has held that an RFC need not be supported by opinion evidence. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). He also brings specific arguments regarding his back pain and his carpal tunnel syndrome.

As for his back pain, Wilmore argues that the ALJ did not adequately account for his alleged inability to sit for long periods of time. He directs the Court to statements he made to the ALJ and to his treatment providers regarding his back pain, and to his pain treatment, which included medication and injections. (Tr. at 50, 592, 729). The ALJ discounted the credibility of Wilmore's subjective complaints concerning his pain, and Wilmore does not challenge that finding on appeal.[5] The ALJ acknowledged Wilmore's complaints of pain and the treatment he received. (Tr. at 18-20). But the ALJ also noted that Wilmore reported his pain was manageable with medication (Tr. at 20, 560, 565), and that Wilmore was nonetheless able to shoot his bow and do physical labor in his barn "most days" (Tr. at 20, 1109, 1111). Wilmore's pain complaints do not establish a functional limitation beyond those

---

[5] *See Hacker v. Barnhart*, 459 F.3d 934, 937 n.2 (8th Cir. 2006) (where a party does not raise an issue in his brief, the issue is deemed abandoned).

already accounted for in his RFC. *See Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022) ("As we have said before, that working may cause discomfort does not dictate a finding of disability[.]").

Wilmore also contends that his diagnosis of carpal tunnel syndrome "seems incompatible" with the RFC limitation to frequent handling and fingering. However, he has failed to explain why this is so, or to otherwise develop this argument at all. *See Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) ("We reject out of hand Vandenboom's conclusory assertion . . . because Vandenboom provides no analysis of the relevant law or facts[.]"). The ALJ considered all of the relevant evidence surrounding Wilmore's carpal tunnel syndrome, then limited Wilmore to an RFC in which fingering and handling may only be present between one-third and two-thirds of the time. *See Hulsey v. Astrue*, 622 F.3d 917, 924 (8th Cir. 2010) (describing the difference between "constant" and "frequent" handling). The Court finds no error on this record.

Wilmore also raises two arguments regarding his mental RFC. He first argues that his RFC does not account for the ALJ's Step Three finding that Wilmore was moderately limited in his ability to maintain concentration, persistence, or pace. (Tr. at 15-16). No error occurred in this regard. Given the deferential standard of review employed in this case, the Court is precluded from "labeling findings as inconsistent if they can be harmonized." *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir.

2018). A moderate difficulty in maintaining concentration, persistence, or pace is consistent with performing simple, routine, and repetitive task jobs with reasoning levels that do not exceed two, where the supervision is simple, direct, and concrete, and where no public interaction is required. *See Howard v. Massanari*, 255 F.3d 577, 581–82 (8th Cir. 2001) (holding that a limitation to simple, routine, and repetitive tasks adequately captured a claimant's deficiencies in concentration, persistence, or pace).

Wilmore finally argues that the mental limitations in the RFC do not account for the severity of his mental impairments. This argument partly concerns the medical opinion evidence from Ms. Anderson and Mr. Smith, which the Court has already determined must be reassessed on remand. The Court therefore declines to address the argument at this juncture.

## IV. Conclusion

For the reasons stated above, the Court finds that the Commissioner's decision is not supported by substantial evidence. This case is therefore reversed and remanded for further review.

IT IS SO ORDERED this 14th day of October, 2022.

_____
UNITED STATES MAGISTRATE JUDGE